IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| PATRICIA HALL-EASLEY ) | |
| ) | Case No. 3:23-cv-00107 |
| v. ) | Chief Judge Crenshaw |
| ) | Magistrate Judge Holmes |
| CLARKSVILLE OPERATING GROUP, LLC ) | |

MEMORANDUM O R D E R[1]

Pending before the Court is the motion of Defendant Clarksville Operating Group for leave to amend its answer and to extend the deadline to amend pleadings (Docket No. 24),[2] to which Plaintiff filed a response in opposition (Docket No. 25) and Defendant filed a reply in support (Docket No. 26). For the reasons discussed below, Defendant's motion (Docket No. 24) is

---

[1] Although the Sixth Circuit has not directly addressed whether a motion to amend is a dispositive or non-dispositive motion, most of the district courts in the Sixth Circuit, including this Court, consider an order on a motion to amend to be non-dispositive. *See, e.g., Gentry v. The Tennessee Board of Judicial Conduct*, No. 3:17-cv-00020, 2017 WL 2362494, at *1 (M.D. Tenn. May 31, 2017) ("Courts have uniformly held that motions to amend complaints are non-dispositive matters that may be determined by the magistrate judge and reviewed under the clearly erroneous or contrary to law standard of review …") (citations omitted); *Chinn v. Jenkins*, Case No. 3:02-cv-512, 2017 WL 1177610, at *2 (S.D. Ohio March 31, 2017) (order denying motion to amend is not dispositive); *Young v. Jackson*, No. 12-cv-12751, 2014 WL 4272768, at *1 (E.D. Mich. Aug. 29, 2014) ("A denial of a motion to amend is a non-dispositive order."); *Hira v. New York Life Insurance Co.*, No. 3:12-CV-373, 2014 WL 2177799, at **1-2 (E.D. Tenn. May 23, 2014) (magistrate judge's order on motion to amend was appropriate and within his authority because motion to amend is non-dispositive); *United States v. Hunter*, No. 3:06-cr-062, 3:12-cv-302, 2013 WL 5820251, at *1 (S.D. Ohio Oct. 29, 2013) (stating that a magistrate judge's orders denying petitioner's motions to amend a petition pursuant to 28 U.S.C. § 2855 were non-dispositive). *See also Elliott v. First Fed. Comm. Bank of Bucyrus*, 821 Fed.Appx. 406, 412-13 (6th Cir. 2020) (referring generally to motion for leave to amend as non-dispositive motion).

[2] Defendant's motion includes an embedded supporting memorandum of law (Docket No. 24-1) rather than a separately filed one as required by Local Rule 7.01(a)(2).

GRANTED.³ The Clerk is directed to separately file the Amended Answer to Plaintiff's Complaint found at Docket No. 24-2 with Exhibit 1 (Certificate of Good Faith) found at Docket No. 24-3.

## I. BACKGROUND

Familiarity with this case is presumed and only those facts and circumstances necessary for context or explanation of the Court's ruling are recited. In her complaint filed on February 6, 2023, Plaintiff alleges that her husband, Paul J. Easley, Sr., was a resident from approximately October 15 to October 19, 2021 of a healthcare facility operated or managed by Defendant. (Docket No. 1 at ¶¶ 2, 8.) Plaintiff asserts that Mr. Easley required dialysis during his residency at Defendant's facility but did not receive dialysis because Defendant failed to develop and implement a treatment plan, which resulted in inadequate care and ultimately led to Mr. Easley's death. (*Id.* at ¶¶ 10–15.) Plaintiff includes two causes of action in her complaint: (1) negligence pursuant to the Tennessee Medical Malpractice Act, Tenn. Code Ann. § 29-26-115, *et seq.*, and (2) gross negligence, willful, wanton, reckless, malicious and/or intentional misconduct. (*Id.* at ¶¶ 17–27.) Plaintiff alleges a jurisdictional basis of diversity of citizenship with an amount in controversy over $75,000 under 28 U.S.C. § 1332. (*Id.* at ¶ 3.)

In its original answer filed on March 15, 2023, Defendant generally denied Plaintiff's claims. (Docket No. 13.) Defendant did not explicitly include an affirmative defense alleging comparative fault against any other parties, but it did include a general affirmative defense that "[n]o act or omission attributable to the Defendant was the cause in fact or legal cause of any injury to the Plaintiffs, or any other outcome, that would not otherwise have occurred" and a general

---

³ Defendant also requested an extension of the amendment deadline, which is denied, as discussed in more detail below. This does not however change the ultimate outcome.

reservation of the right to amend its answer to assert additional affirmative defenses. (Docket No. 13 at ¶ 37, 41.)

On September 22, 2023 – one week prior to the September 29, 2023 deadline for the parties to file a motion to amend or add parties – Defendant filed its motion for leave to amend its answer pursuant to Rule 15(a)(2)[4] to assert the comparative fault of four new healthcare entities: Tennova Healthcare Clarksville, the Veteran's Health Administration, the Department of Veterans Affairs, and Alvin C. York VAMC. (Docket No. 24 at 1.) Defendant seeks to add the following paragraph to its answer:

> Defendant relies upon the doctrine of modified comparative fault as adopted in the state of Tennessee and pursuant to the Federal Rules of Civil Procedure to the extent that either the Plaintiff, Decedent Paul Easley, any party to this action, or non-party to this action is found to be wholly or partially at fault by the finder of fact so as to reduce or completely bar Plaintiffs right of recovery herein as to this Defendant. Specifically, Defendant alleges that four entities not a party to this suit, Tennova Healthcare-Clarksville in Montgomery County, Clarksville, Tennessee, the Veteran's Health Administration, the Department of Veterans Affairs, and Alvin C. York VAMC caused or contributed to the injuries or damages for which the Plaintiff seeks recovery herein. Defendant alleges that Tennova Healthcare-Clarksville deviated from the recognized standard of professional practice in failing to dialyze Mr. Easley until 15:00 on October 20, 2021 despite the fact that Mr. Easley was transferred from Ahava Healthcare of Clarksville on October 19, 2021 and arrived at Tennova Healthcare-Clarksville on October 19, 2021 at 11:57 am. Defendant alleges that Mr. Easley had a critical Troponin of 110.1 on October 20, 2021 but Tennova Healthcare - Clarksville deviated from the recognized standard of professional practice by failing to perform subsequent evaluations of Mr. Easley's Troponin during the remainder of his time at Tennova Healthcare-Clarksville. Defendant alleges that the Veteran's Health Administration, the Department of Veterans Affairs, and Alvin C. York VAMC deviated from the recognized standard of professional practice by contracting to provide transportation to Mr. Easley's dialysis appointments at FMC Dialysis Clinic in Nashville, failing to pick him up for dialysis on Saturday, October 16, 2021, and failing to pick him up for dialysis on Monday, October 18, 2021. These failures on the part of Tennova Healthcare-Clarksville, the Veteran's Health Administration, the Department of Veterans Affairs, and Alvin C. York V AMC caused and contributed to Mr. Easley' s personal injuries and wrongful death. Defendant alleges the comparative fault of Tennova Healthcare Clarksville, the Veteran's

---

[4] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

Health Administration, the Department of Veterans Affairs, and Alvin C. York VAMC pursuant to Tenn. Code Ann.§ 29-26-122, Defendant relies upon the Certificate of Good Faith attached as Exhibit 1 in support of these allegations.

(Docket No. 24-2 at ¶ 36.) Not surprisingly, Plaintiff opposes the amendment. (Docket No. 25.)

## II. LEGAL STANDARDS AND ANALYSIS

Under the plain language of Rule 15(a), leave to amend a pleading generally should be "freely given when justice so requires," which "reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)) (cleaned up). While the moving party "ought to be afforded an opportunity to test [its] claim on the merits," one or more of the following conditions may negate the directive of Rule 15(a): undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment. *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "In general, the Sixth Circuit is very liberal in permitting amendments." *United States ex rel. American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 550 (S.D. Ohio, 1998), *aff'd.* 190 F.3d 729 (6th Cir. 1999) (cleaned up).

In their briefs, the parties focus on two of the above factors: undue delay by Defendant and undue prejudice to Plaintiff.[5] In this case, the analysis of these two factors is interwoven. Defendant argues that its request to amend is timely and not prejudicial to Plaintiff because Defendant moved to amend prior to the deadline of September 29, 2023. (Docket No. 24-1 at 3.)

---

[5] The parties briefly mention but do not discuss several of the factors – bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, and futility of the proposed amendment. The Court finds that none of these conditions exist in this situation.

4

Defendant states that it did not move to amend at an earlier date because it needed time to retain an expert to evaluate whether any comparative fault allegations existed so that it could file a certificate of good faith as required by Tenn. Code Ann. § 29-26-122. (*Id.*; Docket No. 26 at 2.) Defendant also contends that it previously advised Plaintiff of its intent to evaluate the possibility of comparative fault allegations though it does not specify when these communications allegedly occurred. (Docket No. 24-1 at 3.) These statements presumably explain why Defendant moved to amend over six months after filing its original answer and not earlier in the litigation. Finally, Defendant broadly states that its request will not unduly prejudice Plaintiff because the proposed amended answer provides enough specificity to allow Plaintiff to pursue claims directly against the four healthcare facilities, should she elect to do so. (*Id.*)

Plaintiff counters that allowing Defendant to amend its answer would prejudice her because the amendment would trigger a series of events that would put her in an unavoidable and unfair bind. (Docket No. 25 at 6.) Plaintiff asserts that permitting the comparative fault amendment would force her to seek leave to amend her complaint to add the four healthcare providers as defendants.[6]

---

[6] Plaintiff claims that amendment is her "only option" because it is the only way to ensure that "the burden of proof remains with Defendant." (Docket No. 25 at 6.) However, this misunderstands which party has the burden of proof. Defendant has the burden to prove that the four healthcare providers are partially or completely at fault, whether Plaintiff amends her complaint to name those providers or not. *See Banks v. Elks Club Pride of Tennessee 1102*, 301 S.W.3d 214, 225 (Tenn. 2010). Rather, Plaintiff's choice to amend or not impacts the amount she could recover:

> First, [a plaintiff] can decide not to name the healthcare provider as a defendant under Tenn. Code Ann. § 20–1–119(a) (2009) and run the risk of a diminished recovery if the defendant succeeds in convincing the trier of fact that the nonparty healthcare provider is partially or completely at fault. Second, the plaintiff can amend its complaint in accordance with Tenn. Code Ann. § 20–1–119(a) and thereby preserve its opportunity for an undiminished recovery.

*Id.*

(*Id.*) Presumably, Plaintiff is worried that if she takes no action and does not add the four healthcare providers, Defendant will be able to point to those providers as "empty-chair defendants" against whom she could not recover.

Plaintiff further argues that she would face prejudicial problems if she did amend to include the providers. With respect to the three federal entities – the Veteran's Health Administration, the Department of Veterans Affairs, and Alvin C. York VAMC – Plaintiff states that she would be required to provide them with notice pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2679(b)(1). (*Id.* at 7.) However, she states that this notice process would take longer than the 90-day window to file the amended complaint that is permitted under Tenn. Code Ann. § 20-1-119. (*Id.*)

With respect to the fourth entity – Tennova Healthcare Clarksville – Plaintiff contends that adding this healthcare provider as a party would likely destroy diversity if her Tennessee citizenship and that of Tennova coincide. (*Id.* at 8.) She argues that this is prejudicial because it would force her into a situation where she has only two options: (1) add Tennova Healthcare Clarksville as a defendant, which would destroy diversity and therefore diversity jurisdiction, resulting in dismissal of the case from this Court, "restart[]" the case in state court, and cause Plaintiff to duplicate the time and expense that she has already put into the case; or (2) not add Tennova Healthcare Clarksville as a defendant, which would bring about the "empty-chair defendant" issue. (*Id.*)

Throughout her response, Plaintiff cites to the Supreme Court of Tennessee decision in *Banks v. Elks Club Pride of Tennessee 1102*, 301 S.W.3d 214 (Tenn. 2010), to support her position that allowing Defendant to amend its answer would be prejudicial. In that opinion, the Supreme

Court of Tennessee described the Tennessee law that governs the situation in which Plaintiff now finds herself:

> When a defendant tortfeasor files an answer asserting the affirmative defense that a nonparty healthcare provider is at fault for the plaintiff's injuries, the plaintiff has two options. First, it can decide not to name the healthcare provider as a defendant under Tenn. Code Ann. § 20–1–119(a) (2009) and run the risk of a diminished recovery if the defendant succeeds in convincing the trier of fact that the nonparty healthcare provider is partially or completely at fault. Second, the plaintiff can amend its complaint in accordance with Tenn. Code Ann. § 20–1–119(a) and thereby preserve its opportunity for an undiminished recovery.
>
> When a plaintiff elects to amend its complaint to name as a defendant a healthcare provider whom the original defendant identified as liable for the plaintiff's injury, the burden of proof regarding the healthcare provider's negligence does not shift entirely to the plaintiff. It remains with the original defendant who asserted the affirmative defense of comparative fault. Thus, the plaintiff is not required to shoulder the difficulty and expense of proving medical negligence unless, for some reason, it chooses to do so, just as Ms. Banks has already done in this case. That burden remains with the defendant who asserted the affirmative defense of comparative fault in the first place.
>
> Leaving the burden of proof with the defendant asserting the comparative fault defense does not prejudice plaintiffs who elect to amend their complaint to name a healthcare provider as a defendant after the original defendant has asserted that the healthcare provider is comparatively at fault. If the original defendant is unable to prove that the healthcare provider is liable, the plaintiff may still obtain a complete recovery from the original defendant, just as it originally set out to do. If, however, the original defendant is successful in proving that the healthcare provider is liable, then the plaintiff may obtain a complete recovery apportioned between the original defendant and the healthcare provider based on their fault.

*Id.* at 225.

As described in *Banks*, Plaintiff is under no obligation to amend her complaint to add the four healthcare providers as defendants, though doing so may offer certain litigation benefits, including the avoidance of "empty-chair defendants." However, as Plaintiff details in her response, amending her complaint may also present procedural snags, including the administrative exhaustion requirement when adding a federal entity and the potential that diversity jurisdiction would be destroyed.

Notwithstanding these potential issues, the Court finds that allowing Defendant to amend its answer would not be unduly prejudicial to Plaintiff. The Court is sympathetic to Plaintiff's arguments and agrees that the hurdles she discusses are not insignificant. However, the present comparative fault defense that Defendant seeks to assert was neither unimaginable nor even unlikely. Rather, common sense suggests that this situation appears to have arisen, at least in part, because of prior strategic litigation choices. For example, as stated in Plaintiff's responses to Defendant's discovery requests, Plaintiff was aware that Tennova Healthcare Clarksville provided medical care to Mr. Easley in conjunction with the events described in the complaint and that Mr. Easley died while in the Tennova facility's care. (Docket No. 25-1 at 9–10.) Nevertheless, Plaintiff chose not to name Tennova Healthcare Clarksville as a defendant when she filed her complaint.[7] Although the Court, admittedly, cannot say this was a tactical decision, Plaintiff must have known that it was possible that Defendant would allege comparative fault against Tennova Healthcare Clarksville given that Mr. Easley was treated there at the time of his death. Similarly, Plaintiff apparently elected not to administratively pursue a tort claim against any of the federal entities, which precluded their addition as defendants in this lawsuit, despite Mr. Easley's prior treatment at the VA and Plaintiff's awareness of issues with Mr. Easley's transportation to dialysis ostensibly involving the VA. (Docket No. 25.) The Court by no means blames Plaintiff for the current predicament in which she may find herself, but the Court also cannot say that the potential outcomes from permitting Defendant leave to amend to assert comparative fault are unduly prejudicial.[8]

---

[7] Plaintiff also did not reference Tennova Healthcare Clarksville in her complaint. In fact, Plaintiff's complaint contains very few factual allegations and those that are included are more broad than specific. (Docket No. 1 at ¶¶ 8–16.)

[8] It is entirely possible that Plaintiff elected not to pursue claims against the federal entities or Tennova Healthcare Clarksville because she believes their actions did not contribute to Mr.

In addition, several of the outcomes about which Plaintiff laments are not inevitable. Although the Court understands that the destruction of diversity resulting in dismissal of this case based on a lack of jurisdiction would be an adverse outcome for Plaintiff, the Court does not find that this occurrence – much less the *potential* of this occurrence – is unduly prejudicial to Plaintiff.[9]

Federal courts are courts of limited jurisdiction and the law "presume[s] that a cause lies outside this limited jurisdiction." *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Plaintiff elected to file her lawsuit in federal court alleging a jurisdictional basis of diversity of citizenship with an amount in controversy over $75,000, pursuant to 28 U.S.C. § 1332. (Docket No. 1 at ¶ 3.) Plaintiffs who file in federal court routinely risk dismissal of their case based on a lack of jurisdiction, whether it be personal jurisdiction or subject matter jurisdiction. Accordingly, a party cannot be prejudiced by a loss of jurisdiction because it is not a right or guarantee. Further, the Federal Rules of Civil Procedure were designed to "reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Eimers v. Lindsay Corp.*, No. 1:19-CV-44-TRM-SKL, 2021 WL 5281602, at *7 (E.D. Tenn. May 7, 2021) (quoting *Sarrell v. Waupaca Foundry, Inc.*, No. 1:17-cv-56-TRM-SKL, 2017 WL 3161147, at *1 (E.D. Tenn. July 25, 2017)) (internal citation omitted). If a party has a legitimate basis for amendment to add a party whose appearance might destroy diversity, the Court must allow the addition despite the loss of

---

Easley's death. If so, that will presumably factor into her decision whether to seek leave to amend her complaint to add some or all of the additional defendants.

[9] Nothing in this opinion should be construed as a comment on the viability of any of Plaintiff's claims against Defendant, any of Plaintiff's potential claims against the four healthcare providers, any of Defendant's defenses to Plaintiff's claims, or any of Defendant's potential comparative fault claims against the four other healthcare providers. Nor should anything in this opinion be construed as expressing an opinion on whether the proposed amendment will destroy diversity jurisdiction.

9

jurisdiction. Based on these principles, the Court finds that the joinder of non-diverse parties does not unduly prejudice Plaintiff.[10]

In addition, there is no guarantee that dismissal will occur if Defendant is permitted to amend its complaint. Instead, dismissal based on a lack of diversity jurisdiction will only occur *if* Plaintiff moves to amend to add Tennova Healthcare Clarksville and *if* Tennova Healthcare Clarksville is a citizen of the state of Tennessee. Although the likelihood of both events occurring may be strong, they are not inevitable. Furthermore, Plaintiff will be able to pursue her claims in state court if this matter is ultimately dismissed based on a lack of jurisdiction.[11] Although this

---

[10] The Court notes that the current situation is somewhat atypical. More commonly, a plaintiff may prefer to have its claims heard in state court and will, therefore, initiate the lawsuit there, only to have a defendant remove the matter to federal court based on diversity of citizenship. In those situations, it is the plaintiff who may then attempt to join non-diverse parties after removal in the hopes of depriving the Court of jurisdiction so that the case can return to state court. *See, e.g.*, *Bunch v. Fuentes*, No. 3:22-CV-364, 2023 WL 149976 (E.D. Tenn. Jan. 10, 2023); *Davis v. Owners Ins. Co.*, 29 F. Supp. 3d 938, 942 (E.D. Ky. 2014). In those situations, courts should "consider whether, under the particular circumstances, permitting joinder would be fair and equitable and whether the purpose of the amendment is to defeat federal jurisdiction." *Bunch*, 2023 WL 149976 at *1 (citations omitted). Although this situation is the inverse of what is typical, the Court nevertheless finds that Defendant is not seeking to amend its answer to defeat jurisdiction. The Court further finds that permitting joinder would be fair and equitable, as described throughout this opinion.

[11] Plaintiff argues that the dismissal of this action based on a lack of jurisdiction would "burn[] her one opportunity to refile after a dismissal" and cites to Tennessee's "savings statute," which provides:

> If [an] action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, . . . the plaintiff [may] commence a new action within one (1) year after the reversal or arrest.

Tenn. Code Ann. § 28-1-105. "The purpose of the statute is to give plaintiffs a 'brief period' within which to re-file their suit after it has been concluded on a basis other than dismissal on the merits." *McGee v. Jacobs*, 236 S.W.3d 162, 165 (Tenn. Ct. App. 2007) (citations omitted). The Court views the savings statute as further evidence that Plaintiff will not be unduly prejudiced by the amendment of Defendant's answer because she has a procedure and ability to refile her claims in state court.

outcome would not necessarily be ideal for Plaintiff, it would not deprive her of the ability to pursue her claims altogether.[12]

Next, with respect to Plaintiff's arguments related to the three federal entities that Defendant seeks to name in its amendment, the Court once again, and not unsympathetically, recognizes the procedural timing issues that Plaintiff could face if she sought to amend her complaint to name those entities. However, as discussed above, Plaintiff is not required to amend her complaint to assert claims directly against the federal entities. She may elect not to add them as defendants if she believes that Defendant will not be able to meet its burden of proof regarding their liability. *Banks*, 301 S.W.3d at 225. If, on the other hand, Plaintiff does elect to seek leave to amend, she will have to decide how best to navigate the FTCA's procedural requirement of exhaustion of her administrative remedies, which the Court is not free to ignore on equitable grounds. *Shirley v. U.S. Dep't of Transp.*, No. 04-2555 MA/AN, 2005 WL 1661088, at *2 (W.D. Tenn. July 12, 2005).

Plaintiff argues that the FTCA's exhaustion requirement "effectively shifts the burden of proof to Plaintiff and forces her to shoulder the difficulty and expense of proving the medical negligence of the federal entities, which, again, she does not have an expert to support." (Docket No. 25 at 7.) Again, while the Court appreciates the difficulties that Plaintiff may face if she pursues leave to amend to add the federal entities, the Court does not find that such a possibility is "unduly prejudicial" to Plaintiff as that term is used in the context of liberally permitting

---

[12] Plaintiff requests that the Court enter an order "that allow[s] Defendant to assert the comparative fault of Tennova Healthcare Clarksville subject to Tennova Healthcare Clarksville not destroying diversity when added." (Docket No. 25 at 9.) The Court does not believe that such a conditional order is permissible under Rule 15 or under the law governing the Court's limited jurisdiction. Furthermore, the circumstances that destroy, or might destroy, diversity jurisdiction were not addressed in detail by either party and the Court is disinclined to develop that issue on its own. Accordingly, the Court declines to enter such an order.

amendments. The Court may not dispense with the requirement of undue prejudice even if it equity would weigh in favor of doing so.

Separately, the Court holds that Defendant was not unduly delayed in seeking to amend its answer. As a general proposition, delay alone is not enough to deny amendment of a pleading. The delay must be undue, that is, it must be intended for some improper purpose or must result in prejudice to the party opposing the amendment. *Tefft*, 689 F.2d at 639 n.2 ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself to disallow an amendment of a pleading."); *see also Moore*, 790 F.2d at 562 (delay alone, regardless of its length is not enough to bar an amendment if the other party is not prejudiced).

Plaintiff asserts that Defendant had access to Mr. Easley's "chart" since October 2021 when he was admitted to Defendant's facility; that Defendant was able to request records from providers as early as September 2022; and that Plaintiff disclosed the names of certain other healthcare providers in April 2023. (Docket No. 25 at 4-5.) However, Plaintiff does not cogently state on which of these dates she contends that Defendant plainly learned of the potential comparative fault of one of the healthcare providers. As for Defendant, a large portion of its reply focuses on when its counsel was first retained and the time that counsel had to draft the original answer. (Docket No. 26 at 2–3.) Defendant further argues that, even though generally aware of the potential for a comparative fault defense, it was required to retain an expert to provide a letter of merit under Tenn. Code Ann. §§ 29-26-122 and 29-26-115. The Court finds Defendant's arguments persuasive. More importantly, neither party clearly conveyed to the Court the timeline of their communications regarding a potential comparative fault allegation. Nor would the Court necessarily consider the timing to be dispositive of the issue of undue delay, given the totality of the circumstances as discussed herein.

Defendant moved for leave to amend its answer one week prior to the September 29, 2023 deadline for the parties to file a motion to amend or add parties. That fact alone goes far in demonstrating a lack of delay. Although the better approach might have been for Defendant to seek leave to amend at an earlier point in the litigation, the Court finds that Defendant did not act unreasonably given that the deadline had not yet expired and the procedural hoops that Defendant was required to jump through to assert a comparative fault defense. Furthermore, the parties originally requested a later deadline for amendments of October 17, 2023, but the Court included the earlier date of September 29, 2023, with which Defendant complied. Finally, Plaintiff fails to provide any argument to show that Defendant's alleged delay in seeking leave to amend was intended to or did harass or prejudice Plaintiff.[13]

On a final and separate note, the Court denies Defendant's request to modify the case management schedule, specifically to enlarge the September 29, 2023 deadline to amend pleadings. This deadline is for filing motions for leave to amend. Defendant filed its motion for leave to amend its answer prior to the deadline of September 29, 2023. That the motion was not resolved before expiration of the filing deadline is of no consequence.

---

[13] For all the reasons discussed above, the Court does not generally find undue prejudice will result to Plaintiff from the proposed amendment.

### III. CONCLUSION

For the foregoing reasons, particularly the liberality of amendments of pleadings and the preference that cases be decided on the merits, Defendant's motion for leave to amend its answer (Docket No. 24) is GRANTED. The Clerk is directed to separately file the Amended Answer found at Docket No. 24-2 with Exhibit 1 (Certificate of Good Faith) found at Docket No. 24-3.

It is so ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge